UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHERRY MACK,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

17-CV-924

DECISION AND ORDER

On September 15, 2017, the plaintiff, Sherry Mack, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On July 13, 2018, Mack moved for judgment on the pleadings, Docket Item 15; and on September 11, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19. On October 3, 2018, Mack replied, Docket Item 20; and on October 16, 2018, the Commissioner responded to Mack's reply, Docket Item 22.

For the reasons stated below, this Court grants Mack's motion and denies the Commissioner's cross-motion.

**BACKGROUND**

I.  **PROCEDURAL HISTORY**

On April 7, 2014, Mack applied for disability benefits. Tr. 208. She claimed that she had been disabled since January 11, 2011, due to asthma, high blood pressure, knee surgeries with continuing problems, shoulder surgery with continuing problems, sleep apnea and daily use of a continuous positive airway pressure machine, chronic migraines, degenerative disc disease, sciatica, spinal fusion with continuing problems, and a herniated disc. Tr. 208, 218.

On July 18, 2014, Mack received notice that her application was denied because she was not disabled under the Act. Tr. 144, 148, 150, 154, 181. She requested a hearing before an administrative law judge ("ALJ"), Tr. 156, 159, which was held on July 7, 2016, Tr. 83. At the hearing, Mack amended her alleged onset date to February 19, 2013, based on her increased complaints from that time regarding "bilateral knee pain." Tr. 87-88. The ALJ heard testimony from Mack and from Michelle Ross, a vocational expert. Tr. 120.

Mack testified that she once worked as a case manager. Tr. 121. As a case manager, Mack "called patient members . . . after they were discharge[d] from the hospital and assessed their discharge needs, did education over the phone of their medications, referred them to other social agencies, just did an assessment of support services, support needs, support family, and just made sure that [patients] were [safely] discharged." *Id*. Mack testified that the job was "computer based." *Id*. at 122.

Ross offered her opinion that Mack's former work is classified as a "case worker" in the *Dictionary of Occupational Titles* 169.262-010. Tr. 123. Ross noted that the

position is "sedentary, per the *[Dictionary]*" and "[l]ight as she describes performing it and in her paperwork."  *Id.*  Ross also opined that a person of Mack's age, education, and experience—with physical limitations that include but are not limited to "no kneeling, crouching, crawling . . . ladders, ropes, or scaffolds—would be able to perform Mack's prior work both "as performed or as generally performed."  Tr. 124.

The ALJ then issued a decision on October 31, 2016, confirming the finding that Mack was not disabled.  *Id.* at 42.  Mack appealed the ALJ's decision, but her appeal was denied, and the decision then became final.  Tr. 2-5.  On September 15, 2017, Mack filed this action, asking this Court to review the ALJ's decision.  Docket Item 1.

## II. THE ALJ'S DECISION

In denying Mack's application, the ALJ evaluated Mack's claim under the Social Security Administration's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.  § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.  § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations.  § 404.1520(a)(4)(iii).  If the claimant's severe impairment or impairments meet or equal one listed in the regulations,

the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Mack had not engaged in "substantial gainful activity" since February 19, 2013, the amended alleged onset date. Tr. 33. At step two, the ALJ found that Mack had the following severe impairments: "obesity, cervical and lumbar spinal derangement, degenerative arthritis of the bilateral knees, carpal tunnel syndrome and De Quervain's syndrome, and asthma." *Id.*

4

Although Mack also "alleged, and the evidence of record lists a diagnosis of, fibromyalgia," the ALJ determined that "there is no clear evidence of this impairment in the record." *Id.* He also determined, at step two, that Mack's "medically determinable mental impairments of anxiety and depressive disorders, considered singly and in combination, do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Tr. 34.

At step three, the ALJ determined that Mack's severe impairments did not medically equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 36. In assessing Mack's RFC, the ALJ determined that Mack could perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[1] but that Mack is "limited to occasionally climbing ramps/stairs and balancing." Tr. 37. The ALJ determined that Mack cannot kneel, crouch, or crawl; that she cannot climb ladders, ropes, or scaffolds; and that she "should not be exposed to extreme heat, cold, wetness, or humidity, and she should avoid concentrated exposures to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants." *Id.* "She is limited to frequent handling and fingering." *Id.* "She requires the ability to alternate from sit and stand at her discretion." *Id.* Finally, the ALJ found that "[t]he use of an assistive device is required when ambulating with continuous walking, limited to no more than 10 minutes." *Id.*

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

At step four, the ALJ determined that Mack "is capable of performing past relevant work as a caseworker." Tr. 41. The ALJ provided that "[t]his work does not require the performance of work-related activities precluded by the claimant's" RFC. *Id*. Specifically, the ALJ determined that Mack "has past relevant work as a caseworker (*Dictionary of Occupational Titles* code # 169.262-010), skilled work (SVP 5), both as actually and generally performed at the sedentary level of exertion." *Id*. The ALJ based his findings on the Ross's opinion testimony at the hearing. *Id*.

## **LEGAL STANDARDS**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## **DISCUSSION**

Mack makes several arguments in support of her contention that the ALJ erred. First, she argues that the ALJ erred in making findings at step four of Social Security Administration's five-step evaluation process for disability determinations. Docket Item

6

15-1 at 2-4.  Specifically, Mack argues that the ALJ erred by not following the directives in Social Security Ruling 00-4p to resolve a conflict between Ross's testimony and the *Dictionary of Occupational Titles* in evaluating whether Mack could perform her past relevant work as that work is generally performed throughout the economy.  *Id.* at 2-3.  And Mack argues that substantial evidence does not support the ALJ's finding that she could perform her past relevant work as she actually performed that work.  *Id.* at 3-4.  In addition, Mack argues that the ALJ failed to account for all of the functional limitations identified in the medical opinions that he accepted in formulating her RFC.  *Id.* at 4-8.

"[I]n the fourth stage of the [disability] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally."  *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original).  "This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed."  *Id.*  "Whereas the *Dictionary [of Occupational Titles]* describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs."  *Id.*

## A. Mack's Past Work as Generally Performed

"A 2000 Social Security Administration Policy Interpretation Ruling . . . governs the Commissioner's assessment of whether any particular job can [generally] accommodate a given claimant's physical limitations."  *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019).  "Under the Ruling, the Commissioner 'relies primarily on the *Dictionary [of Occupational Titles]* for information about the job's requirements' but 'may also use vocational experts to resolve complex vocational issues.'"  *Id.* (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)).  "If the

7

Commissioner does consider the testimony of such experts, however, she must be alert to the possibility of 'apparent unresolved conflicts' between the testimony and the *Dictionary*." *Id.* (quoting SSR 00-4p). "In light of this possibility, the Ruling tasks the Commissioner with 'an affirmative responsibility to ask about any possible conflict,' . . . and to 'elicit a reasonable explanation for any such conflict before relying on the vocational expert's testimony.'" *Id.* (quoting SSR 00-4p). "[T]he Ruling mandates that whenever the Commissioner intends to 'rely on a vocational expert's testimony,' she must identify and inquire into those areas where the expert's testimony *seems to* conflict with the *Dictionary*.'" *Id.* at 92 (emphasis in original) (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)). "[T]he Ruling must be read to 'impose an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the vocational expert if there is one." *Id.* at 94 (quoting *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018)).

In *Lockwood*, the claimant argued that the Commissioner "neglected the Ruling's requirements." *Id.* at 91. In that case, the Commissioner determined that the claimant was not disabled because, notwithstanding his physical limitations, "there were jobs that existed in significant numbers in the national economy that he could perform." *Id.* at 92 (quoting the record). Specifically, "[t]he Commissioner reasoned that even though [the claimant] suffered an impairment that required him to 'avoid all overhead reaching tasks,' [a vocational expert's] testimony had established that at least three specific jobs existing collectively in significant number in the national economy would accommodate this limitation." *Id.* However, the jobs that the vocational expert identified were ones

8

that the *Dictionary* established as requiring "occasional or frequent reaching."  *Id.* (internal citation omitted).  Because "[i]n both [a] 1985 Policy Statement and common usage, 'reaching' includes overhead reaching," the Second Circuit found that there was "at least an *apparent* conflict" between the *Dictionary* and the vocational expert's testimony "that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony."  *Id.*  The ALJ's failure to resolve the conflict required the court to "reverse and remand for further proceedings so that the Commissioner may have the opportunity to conduct the requisite inquiry in the first instance."  *Id.* at 94.

In this case, Mack similarly argues that the ALJ neglected the Ruling's requirements.  Docket Item 15-1 at 2-3.  The ALJ determined that Mack suffered from an impairment that requires her to avoid work involving "kneeling, crouching, crawling," and "climbing ladders/ropes/scaffolds."  Tr. 37.  Notwithstanding these physical limitations, the ALJ found, relying on Ross's testimony, that Mack "has past relevant work as a caseworker" as defined in the *Dictionary*, at 169.262-010, "both as actually and generally performed at the sedentary level of exertion."  Tr. 41.  But, as Mack points out, the *Dictionary* establishes that this particular job typically requires "[k]neeling . . . up to 1/3 of the time."  *See Dictionary of Occupational Titles*, 169.262-010, 1991 WL 647445.  Therefore, the *Dictionary* raises an inconsistency with Ross's testimony that Mack—who the ALJ determined cannot kneel at work—is capable of performing a "case worker" job that, as described in the *Dictionary*, requires kneeling.  Therefore, the Ruling required the ALJ "to probe this apparent conflict before relying on [Ross's] testimony."  *Lockwood*, 914 F.3d at 92.  Because the ALJ did not do that, or make any findings

9

resolving the apparent conflict in his decision, the ALJ erred in determining that that Mack could perform work as a caseworker as that job is generally performed. *See id.*

B. **Mack's Past Work as Actually Performed**

"Past relevant work is 'either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy.'" *Speruggia v. Astrue*, 2008 WL 818004, at *12 (E.D.N.Y. Mar. 26, 2008) (quoting SSR 82-61, 1982 WL 31386, at *3). The regulations do not require explicit findings "at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pino v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (emphasis in original). In other words, the claimant has the burden of showing that she cannot perform past relevant work as she actually performed it *and* as that work is performed generally. *See id.*. So an ALJ's decision at step four can find support in one or the other.

For the reasons described above, the ALJ's decision is inadequate with regard to Mack's past relevant work as generally performed. But if the ALJ used record evidence to support his finding that Mack could perform her past relevant work as she actually performed it, remand will not be necessary.

"Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41." *Id.* In this case, Mack provided both. Most significant for the issue here, Mack's work history report indicated that her job as a caseworker required her to walk for two hours per day and to stand for two hours per day. Tr. 243. Mack's disability report indicated that

10

Mack's job as a caseworker required her to walk for four hours each day and to stand for six hours each day. Tr. 220.

The ALJ found that Mack had the RFC to perform "sedentary work as defined in 20 C.F.R. 404.1567(a)" with several further limitations. Tr. 37. According to the applicable regulation, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required *occasionally* and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (emphasis added). "Occasionally" is defined as "from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id*.

But as noted above, Mack's job as a caseworker required her to spend four hours or more on her feet each day. *See* Tr. 220, 243. In other words, the record evidence indicates that Mack's case-worker duties required more time on her feet than she now can spend on her feet under her RFC. The ALJ did not address this evidence or explain the apparent inconsistency in his conclusion that Mack "is able to return to her past relevant work as actually and generally performed," however. Tr. 41. And that requires remand.

An ALJ is required to "*both* identify evidence that supports his conclusions *and* build an accurate and logical bridge from that evidence to his conclusions." *Perry v. Berryhill*, 2019 WL 1092627, at *2 (4th Cir. Mar. 8, 2019) (quoting *Woods v. Berryhill*,

11

888 F.3d 686, 694 (4th Cir. 2018)). Otherwise, the reviewing court is "'left to guess about how the ALJ arrived at his conclusions,' and, as a result, cannot meaningfully review them." *Id.* (quoting *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015)).[2] "Although the ALJ was not required to mention every piece of evidence, providing an 'accurate and logical bridge' required him to confront the evidence in [Mack's] favor and explain why it was rejected before concluding that" she was able to return to her past relevant work as she actually performed it. *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). Because the ALJ did not do that here, and because he did not follow the directives in SSR 00-4p, the case must be remanded for further proceedings so that the ALJ can conduct the requisite inquiries in the first instance.[3]

---

[2] The Commissioner identifies some possible reasons why the ALJ could have determined that Mack's past work as she actually performed it did not actually conflict with the ALJ's formulation of Mack's RFC. Docket Item 19-1 at 19-20. But that explanation requires the resolution of conflicting evidence about Mack's caseworker job in the Commissioner's favor—something the ALJ did not do. *See id.*; Tr. 41. Instead, the ALJ simply relied on the *Dictionary of Occupational Titles*'s explanation of "caseworker," which, as this Court explained, was also a mistake because it too conflicts with Mack's RFC.

[3] Mack also contends that the ALJ failed "to account for all of the functional limitations identified in the medical opinions which he accepted." Docket Item 15-1 at 4-8. "Because [Mack's] case must return to the agency either way for the reasons already given, the Commissioner on remand will have the opportunity to obviate this dispute altogether by giving express consideration to the [medical opinions identified] and by making clear what, if any, weight [they] merit[]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019).

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Mack's motion for judgment on the pleadings, Docket Item 15, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: May 8, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE